IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JAMES MILLER,

      **Plaintiff,**

vs.                                                           No. 99cv1221 JC/JHG

**KENNETH S. APFEL,**
**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter is before the Court on Plaintiff's (Miller's) Motion to Reverse or Remand Administrative Decision, filed July 20, 2000. The Commissioner of Social Security issued a final decision denying Miller's application for disability insurance benefits and supplemental security income. The United States Magistrate Judge, having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, finds the motion to remand is well taken and recommends that it be GRANTED.

Miller, now fifty-one years old, filed his application for disability insurance benefits and supplemental security income on April 26, 1995, alleging disability since September 30, 1993, due to lower spine compression fractures, neck problems, nervousness, depression and arthritis.[1] He

---

[1] At the December 20, 1996 administrative hearing, Plaintiff's counsel requested the ALJ dismiss Miller's application for disability insurance benefits because there was no medical evidence to establish disability during the period he was insured. Tr. 29. At that time, the ALJ noted the earliest date on which Miller could have become entitled to supplemental security income benefits was the date he filed his application, April 26, 1995. Therefore, the proper period for consideration began on April 26, 1995, rather than September 30, 1993.

has a high school education and past relevant work as a yard worker and cabinet maker. The Commissioner denied Miller's application for supplemental security income both initially and on reconsideration. On December 20, 1996, the ALJ held an administrative hearing. On March 20, 1997, the Commissioner's Administrative Law Judge (ALJ) denied benefits, finding Miller did not have any disorder or combination of disorders meeting or equaling in severity any of the disorders described in the Listing of Impairments, Subpart P, Appendix 1. The ALJ specifically reviewed the impairments under section1.00 of the Listings and found Miller's condition was not severe enough to be deemed presumptively disabled. The ALJ further found Miller retained the residual functional capacity(RFC) for light work.[2] Miller filed a Request for Review of the decision by the Appeals Council. On December 8, 1997, the Appeals Council denied Miller's request for review of the ALJ's decision. Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes. Miller seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395

---

[2] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, a claimant must have the ability to do substantially all of these activities. 20 C.F.R. § 404.1567(b).

(10th Cir. 1994).

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)). The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *Thompson v. Sullivan*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show he is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or he is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *Id.*

In support of his motion to reverse or remand, Miller makes the following arguments: (1) the ALJ erred in considering his work prior to onset of disability; and (2) the ALJ's finding that his mental impairment was not severe is contrary to the evidence and the law; (3) the ALJ erred in his analysis under the listings of impairments for mental impairments; (4) and the ALJ erred in finding he could perform light work and relied on the vocational expert's testimony which was

based on improper hypothetical questioning.

### ALJ's Consideration of Miller's Work Prior to Onset of Disability

Miller claims the ALJ erred when he considered his work prior to 1993 even though the onset of disability was April 26, 1995. Miller further claims the ALJ failed to consider that his physical and mental impairments progressively worsened. In his Decision, the ALJ stated:

> I note that the claimant's injury occurred in 1979 and his motor vehicle accident occurred in 1988. Yet, the claimant was able to work until 1993 as a self-employed handyman. Further, the claimant's job duties entailed standing and/or walking three hours each per day, frequent bending, and lifting more than 50 pounds frequently and 100 pounds occasionally. Thus, the claimant's old compression fractures of his lumbar spine obviously did not prevent him from engaging in heavy work for many years after his injury.
>
> * * * * * * *
>
> I reiterate that the claimant was able to perform heavy work until 1993. There is no evidence regarding any intervening event from 1993 to 1995 that would account for a worsening of his back and/or leg symptoms.

Tr. 18. In arriving at his conclusion that Miller did not suffer from disabling pain, it was proper for the ALJ to consider the type of work Miller was capable of performing prior to his alleged date of disability. The ALJ's Decision also indicates the ALJ did consider whether Miller's physical impairment had worsened and found "no evidence . . . that would account for a worsening of his back and/or leg symptoms." Tr. 18. Substantial evidence supports this finding. The Court has scrutinized the entire record and is aware of Miller's chronic low back pain and its attendant complications. However, the record reflects that Miller's pain was well controlled so long as he followed the prescribed course of treatment, i.e., pain medication, physical therapy and back exercises. Tr. 196 (March 26, 1996, Miller rates pain as 1/10 on a scale of 10/10; physician notes pain is well controlled for several months on medication); Tr. 195 (April 9, 1996, Miller

evaluated for low back pain and leg pain– negative physical findings); Tr. 189 (January 8, 1996, Miller rates pain as 2-3/10 on a scale of 10/10– physician finds no gross motor or sensory defects).

**The ALJ Erred in Finding that Miller's Mental Impairment was Not Severe**

Miller claims the ALJ's finding that his mental impairment was not severe is contrary to law and to the evidence.  In his Decision, the ALJ found that "although [Miller] was diagnosed with major depression, dysthymia,[3] a somatoform disorder,[4] and alcohol dependence," he nonetheless found that "these disorders ha[d] not been 'severe' impairments during times at issue."  Tr. 14.

At step two, a claimant is required only to make a "de minimis showing" that his medically determinable impairments, in combination, are severe enough to significantly limit his ability to perform work-related activity.  *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).  Although an impairment is not severe if it has no more than a minimal effect on an individual's physical or mental abilities to do basic work activities, the possibility of several such impairments combining to produce a severe impairment must be considered.  *See* SSR 85-28, 1985 WL 56856, at *3, *4 (1985).  Under 20 C.F.R. §§ 404.1523 and 416. 923, when assessing

---

[3] Dysthymia is a chronic mood disorder manifested as depression for most of the day, more days than not, accompanied by some of the following symptoms: poor appetite or overeating, insomnia or hypersomnia, low energy or fatigue, low self-esteem, poor concentration, difficulty making decisions, and feelings of hopelessness.  *Stedman's Medical Dictionary* 536 (26th ed. 1995).

[4] Somatoform disorders are a group of psychiatric disorders characterized by physical symptoms that suggest but are not fully explained by a physical disorder and that cause significant distress or interfere with social, occupational or other functioning.  *The Merck Manual* 1508 (17th ed. 1999).

the severity of whatever impairments an individual may have, the adjudicator must assess the impact of the combination of those impairments on the person's ability to function, rather than assess separately the contribution of each impairment to the restriction of his or her activity as if each impairment existed alone.  *Id.*  A claim may be denied at step two only if the evidence shows that the individual's impairments, when considered in combination, are not medically severe, i.e., do not have more than a minimal effect on the person's physical or mental abilities to perform basic work activities.  *Id.*  If such a finding is not clearly established by medical evidence, however, adjudication must continue through the sequential evaluation process.  *Id.*

Additionally, in assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe.  SSR 96-8P, 1996 WL 374184, at *4 (July 2, 1996).  Although a not severe impairment standing alone may not significantly limit an individual's ability to do basic work activities, it may be critical to the outcome of a claim when considered with limitations or restrictions due to other impairments.  *Id.*  In some instances, limitations due to a "not severe" impairment in combination with limitations imposed by an individual's other impairments, may prevent a claimant from performing past relevant work or may narrow the range of other work that the individual may still be able to do.  *Id.*

In this case, the ALJ found at step two of the sequential evaluation process that Miller's depression was "not severe."  Nonetheless, the ALJ, in his hypothetical question to the vocational expert (VE), asked the VE to assume the following limitations: a slight restriction of daily living activities; slight difficulties in maintaining social functioning; seldom deficiencies of concentration, persistence or pace resulting in a failure to complete tasks in a timely manner; and no episode of

deterioration or decompensation in work or work-like settings.[5]  Tr. 19.  In response, the VE stated the occupational base which she had identified would be eroded by 10% to 20% because of Miller's attention and concentration.  *Id.*   The ALJ did not accept the VE's response because in his opinion "the claimant's mental capabilities have not had a significant impact on his ability to perform work-related mental functions."  Tr. 19.  This conclusion is not supported by substantial evidence.

On May 6, 1997, Charlotte Glass, M.A., Miller's therapist for more than a year, reported that Miller's depression moderately restricted his daily living, severely restricted his ability to maintain social functioning, and that Miller often suffered from deficiencies in concentration, persistence or pace resulting in failure to complete tasks in a timely manner.  Tr. 406, 407.  Ms. Glass did not rate Mr. Miller on "episodes of deterioration or decompensation in work or work like settings which cause the individual to withdraw from the situation or to exacerbate signs and symptoms," noting "insufficient evidence."  *Id.*   Ms. Glass also completed the 12.04 Affective Disorders form and found Miller suffered from Depressive syndrome based on her opinion and observations that Miller exhibited the following: (1) Anhedonia or pervasive loss of interest in almost all activities; (2) sleep disturbances; (3) decreased energy; (4) feelings of guilt or worthlessness; (5) difficulty concentrating or thinking; (6) and thoughts of suicide.  Tr. 408.  On the Rating of Impairment Severity, the "B" Criteria of the Listings, Ms. Glass scored Miller as follows: (1) Restrictions of Activities of Daily Living– **Moderate**; (2) Difficulties in Maintaining Social Functioning– **Marked;** (3) Deficiencies of Concentration, Persistence and Pace Resulting

---

[5] Apparently, these functional limitations were take taken from the ALJ's OHA Psychiatric Review Technique Form.  Tr. 24.

in Failure to Complete Tasks in a Timely Manner– **Often**; and (4) Episodes of Deterioration or Decompensation in Work or Work-like Settings Which Cause the Individual to Withdraw from that Situation or to Experience Exacerbation of Signs and Symptom– **Insufficient Evidence**.  Tr. 407.

Dr. Baca, Miller's treating psychiatrist, diagnosed Miller with major depression and opined that the depression contributed to Miller's complaints of chronic back pain.  Tr. 411.  Dr. Baca also noted Miller had "shown continuing problems in being able to function socially and had difficulty in improving his living situation."  Tr. 412.  On October 22, 1997, Dr. Baca completed a Physician's Questionnaire and noted that Miller's depression moderately restricted his daily living, severely restricted his ability to maintain social functioning, and that Miller often suffered from deficiencies in concentration, persistence or pace resulting in failure to complete tasks in a timely manner.  Tr. 412.  Dr. Baca also found Miller suffered from Depressive syndrome and noted Miller had exhibited the following: (1) anhedonia or pervasive loss of interest in almost all activities; (2) sleep disturbance; (3) decreased energy; (4) feelings of guilt or worthlessness; (5) difficulty concentrating or thinking; and (6) thought of suicide.  Tr. 413.  As to the "B" criteria of the Listings, Dr. Baca rated Miller as follows: (1) Restrictions of Activities of Daily Living– **Moderate**; (2) Difficulties in Maintaining Social Functioning– **Marked**; (3) Deficiencies of Concentration, Persistence and Pace Resulting in Failure to Complete Tasks in a Timely Manner– **Often**; and (4) Episodes of Deterioration or Decompensation in Work or Work-like Settings Which Cause the Individual to Withdraw from that Situation or to Experience Exacerbation of Signs and Symptom– Insufficient Evidence.  Tr. 415.

On the other hand, the non-examining consultative psychologist completed a Psychiatric

8

Review Technique (PRT) form and rated Miller on the "B" Criteria of Listings for Listings 12.04, 12.07 and 12.09 as follows: (1) Restrictions of Activities of Daily Living– **Slight**; (2) Difficulties in Maintaining Social Functioning– **Slight**; (3) Deficiencies of Concentration, Persistence and Pace Resulting in Failure to Complete Tasks in a Timely Manner– **Seldom**; and (4) Episodes of Deterioration or Decompensation in Work or Work-like Settings Which Cause the Individual to Withdraw from that Situation or to Experience Exacerbation of Signs and Symptom– **Never**. The ALJ gave greater weight to the opinion of the non-examining psychologist than to Miller's treating psychiatrist and therapist but did not provide any explanation for why he disregarded the opinions of Ms. Glass and Dr. Baca. Moreover, the "findings of a nontreating physician based upon limited contact and examination are of suspect reliability." *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987).

Additionally, the record also indicates Miller called the crisis line on more than one occasion when he was feeling particularly depressed and suicidal. Tr. 346, 356. Accordingly, the Court finds that the record as a whole does not support the ALJ's finding at step two of the sequential evaluation process that Miller's depression was not severe. The evidence indicates Miller's depression had more than a minimal effect on his mental abilities to perform basic work activities. The Court also notes that the ALJ failed to address the aforementioned reports submitted by Ms. Glass and Dr. Baca in his Decision. An ALJ is required to give controlling weight to a treating physician's well-supported opinion, so long as it is not inconsistent with other substantial evidence in the record. 20 C.F.R. § 416.927(d)(2). On remand, the ALJ shall set specific, legitimate reasons for his decision to disregard Dr. Baca's and Ms. Glass' reports. *Miller v. Chater*, 99 F.3d 972, 976 (10th Cir. 1996). In doing so, the ALJ must consider several specific

factors, including: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and he kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). On remand, at step three of the sequential evaluation process, the ALJ shall reevaluate Miller under Listing 12.04, Affective Disorders, and give his analysis of why Miller does not meet this listing and set out the evidence considered or rejected.

## RECOMMENDED DISPOSITION

The ALJ did not apply correct legal standards and his decision is not supported by substantial evidence. Miller's Motion to Reverse and Remand Administrative Decision, filed July 20, 2001, should be granted. This case should be remanded to the Commissioner in order to allow the ALJ the opportunity to set specific, legitimate reasons for his decision to disregard Dr. Baca's and Ms. Glass' reports and to reevaluate Miller's depression at step three of the sequential evaluation process and give his analysis of why Miller does not meet Listing 12.04 and set out the evidence considered or rejected.

**JOE H. GALVAN**
**UNITED STATES MAGISTRATE JUDGE**

## **NOTICE**

Within ten days after a party is served with a copy of these proposed findings and recommended disposition that party may, pursuant to 28 U.S.C. § 636 (b)(1), file written objections to such proposed findings and recommended disposition. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.